Filed 8/18/15  P. v. Herrera CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRYAN HERRERA,<br><br>    Defendant and Appellant. | 2d Crim. No. B253041<br>(Super. Ct. No. 1396840)<br>(Santa Barbara County) |

Bryan Herrera appeals his conviction by jury for premeditated and deliberate first degree murder (Pen. Code, §§ 187, subd. (a), 189)[1] with personal use of a deadly weapon, i.e., a knife (§ 12022, subd. (b)(1)).  Appellant admitted a prior prison enhancement (§ 667.5, subd. (b).) and was sentenced to 27 years to life state prison.  Appellant contends that the evidence does not establish a premeditated and deliberate killing and the trial court erred in not instructing on provocation.  We affirm.

*Facts and Procedural History*

On the evening of July 10, 2011, appellant ("Blanco") fatally stabbed Victor Ramirez ("Little Risky"), a fellow Westside VLP gang member, in an alley. Earlier that evening, appellant's girlfriend, Yadira F. argued with appellant about his drinking and association with gang members.  Yadira did not want their son growing up

---

[1] All statutory references are to the Penal Code unless otherwise stated.

around gang members and wanted to leave appellant for Ramirez.  In 2010, when appellant was in state prison, Yadira and Ramirez had a sexual relationship.  Appellant knew about it and was extremely jealous and controlling.  He regularly checked Yadira's phone for text messages and phone calls.

Two days before Ramirez's murder, appellant and Yadira attended a birthday party.  Yadira saw Ramirez and smiled at him.  Appellant confronted Ramirez, had a fist fight with Ramirez in the alley, and shook hands.  That was how Westside VLP gang members settled their differences.  Weapons were used on gang enemies, not fellow gang members.

The day of the stabbing, Yadira, appellant, and friends went to Red Rock near Lake Cachuma.  Yadira invited Ramirez, adding "a smiley face" to the text message.  Ramirez did not respond.  While at Red Rock, Yadira misplaced her cell phone.  Appellant found the cell phone, checked it for texts and messages, and used it to text Ramirez that evening.

At approximately 11:00 p.m., Elmer Mendoza,  Miguel Hernandez, and Tania Jiminez  were smoking marijuana near the O Street alley in Lompoc and heard a commotion.  Ramirez and a man in a hoodie were in the alley, swinging their arms at each other as if body boxing.  Ramirez jumped back and fell against a car.  The man in the hoodie walked away.  Mendoza ran over to help Ramirez who had blood on his shirt and was having trouble breathing.

Ramirez had three stab wounds to the chest and died an hour later.  The coroner determined that Ramirez suffered defensive wounds on the arms, three stab wounds to the chest, and a stab wound to the left arm pit.

An investigator reviewed the text messages from Ramirez's phone and the incoming and outgoing phone calls on Yarida's landline phone and cell phone.  The phone records showed that Ramirez and appellant exchanged text messages before the stabbing.  Ramirez was on probation and wore a GPS anklet that indicated that he left his house at 10:51 p.m. and walked to the alley.  A few minutes after the stabbing, appellant made two phone calls to Yadira.  The police searched Yadira's house and found jeans in a

2

laundry hamper.  The jeans belonged to appellant and were spattered with blood that matched Ramirez's DNA profile.

At trial, appellant claimed that he wielded the knife in self defense but did not intend to kill Ramirez.  Before the stabbing, appellant took Yadira's cell phone, armed himself with a knife, and left the house.  Appellant texted Ramirez, identified himself, and said they had to meet.  Ramirez texted back about the birthday party:  "[P]eople are trying to talk shit to me and tell me you fucked me up, and we both know no one fucked no one up, and I haven't opened my mouth to no one, and that shit is getting me mad. . . ."

Appellant pressed for a meeting.  Ramirez was subject to an 11:00 o'clock home curfew and agreed to meet at "Yogi's alley" near Ramirez's house.

When appellant arrived, Ramirez was mad that people were saying that appellant gave him a black eye at the birthday party.  Appellant testified that Ramirez "started going crazy,"  reached towards his waistband, and said "I'll fucking blast you." Appellant drew his knife and "just started swinging it."  Appellant fled, tossed the knife under a trailer, and called Yadira.

After appellant walked to Yadira's house, he and Yadira concocted an alibi. At trial, appellant admitted that he lied to the police.  Appellant also admitted that he never saw a gun or weapon on Ramirez.

*Premeditation and Deliberation*

Appellant argues that the evidence does not support the finding that the killing was premeditated and deliberate.  As in any sufficiency-of-the-evidence case, we review the record in the light most favorable to the prosecution and draw all reasonable inferences in support of the judgment.  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)  We do not reweigh the evidence or reassess the credibility witnesses.  (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)  A reversal for insufficient evidence is unwarranted unless it appears that under no hypothesis whatever is there substantial evidence to support the jury's verdict.  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Citing *People v. Anderson* (1968) 70 Cal.2d 15, appellant argues that premeditation and deliberation must be established by planning, motive, and manner of

3

killing. " 'Anderson does not require that these factors be present in some special combination or that they be accorded a particular weight, nor is the list exhaustive. Anderson was simply intended to guide an appellate court's assessment whether the evidence supports an inference that the killing occurred as the result of preexisting reflection rather than unconsidered or rash impulse. [Citation.]' Thus, while premeditation and deliberation must result from ' " careful thought and weighing of considerations" ' [citation], we continue to apply the principle that '[t]he process of premeditation and deliberation does not require any extended period of time. "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . ." [Citations.]' [Citation.]" (*People v. Bolin, supra,* 18 Cal.4th at pp. 331-332.)

Here the jury could infer motive to kill based on appellant's jealously. Yadira wanted to leave appellant for Ramirez. Appellant was angry that Ramirez disrespected him and had lied about his sexual affair with Yadira. It was a strong motive to kill.

Premeditation and deliberation were established by the manner of killing. Appellant met Ramirez in the alley and stabbed him seven times. Three stab wounds were to the chest, centered around the heart. A targeted, single blow with a weapon shows a preconceived design to kill. (See e.g., *People v. Prince* (2007) 40 Cal.4th 1179, 1253 [clustered stab wounds supported inference of deliberate killing]; *People v. Lewis* (2009) 46 Cal.4th 1255, 1293 [victim strangled to the point on unconsciousness before throat cut]; *People v. Paton* (1967) 255 Cal.App.2d 347, 352 [victim stabbed in heart; knife wounds were not wild and unaimed].) Ramirez suffered a fourth stab wound to the left arm pit and three defensive wounds to the arms. There was strong evidence of premeditation and deliberation. (See e.g., *People v. Clark* (1967) 252 Cal.App.2d 524, 529.)

The evidence also shows planning activity. Appellant took Yadira's cell phone, changed into dark pants and a hoodie, armed himself with the knife, and used the

cell phone to text Ramirez. Appellant pressed Ramirez for a meeting and met him in the alley. The quick attack and escape show planning activity.[2] The jury reasonably could infer that appellant knew, as a matter of VLP gang custom, that Ramirez would not use a weapon on a fellow gang member.

Intent to kill was established by appellant's violent behavior. Appellant fought Ramirez two days before the stabbing, then texted him and confronted him in the alley with the knife. It was stipulated that appellant had engaged in other acts of violence in which he assaulted victims. (Evid. Code, § 1101, subd. (b).) In a 2009 incident, appellant attacked a gang dropout with an axe.

A rational trier of fact could find, beyond a reasonable doubt, that the killing was willful, deliberate, and premeditated. (*People v. Lewis, supra,* 46 Cal.4th at p. 1293.) Appellant "simply asks this court to reweigh the facts" (*People v. Bolin, supra,* 18 Cal.4th at p. 333) and makes no showing that the conviction is unsupported by the evidence or violated his due process right to a fair trial. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318 [61 L.Ed.2d 560, 573]; *People v. Jennings* (2010) 50 Cal.4th 616, 649.)

*Provocation*

Appellant argues that the trial court erred in not instructing that provocation may negate premeditation and reduce murder from first degree to second degree.[3]

_____

[2] Appellant was prosecuted on the theory that the murder was either premeditated and deliberate or committed by lying in wait. The jury returned a "not true" finding on the lying in wait special circumstance allegation (§ 190.2, subd. (a)(15)). Appellant's argument that there is insufficient evidence to support a lying-in-wait, first degree murder conviction is moot.

[3] Appellant requested a CALCRIM 522 instruction that stated: "Provocation may reduce a murder from first degree to second degree murder and may reduce a murder to manslaughter. The weight and significance of the provocation, if any, are for you to decide. If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. [Also, consider the provocation in deciding whether the defendant committed murder or manslaughter.]"

The trial court also rejected a CALCRIM 570 heat of passion, voluntary manslaughter instruction because appellant "is asserting a claim of self-defense, not heat

5

(CALCRIM 522.) It is a pinpoint instruction and explains or highlights a defense theory. (*People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1333.) A trial court is not required to give a pinpoint instruction that is argumentative or not supported by substantial evidence. (*People v. Bolden* (2002) 29 Cal.4th 515, 558)

Appellant's trial attorney argued that Ramirez "was going to shoot him and reached for a weapon in his waistband. I don't think it gets more sufficient for provocation than that." The trial court found that the evidence supported an instruction on self-defense but not provocation. "It seems to me that what we have is either murder, first-degree, under premeditation and deliberation, as the People are arguing, with a special circumstance of lying in wait, if that's what the jury believes happened; or, if they don't find premeditation and deliberation, it's a second-degree; or, if they believe the self-defense, imperfect self-defense, the imperfect self-defense is voluntary manslaughter." The trial court declined to instruct on provocation and instructed on first degree murder by premeditation and deliberation or by lying in wait (CALCRIM 521), first or second degree murder with malice aforethought (CALCRIM 520), justifiable homicide, self-defense (CALCRIM 505), and imperfect self-defense, voluntary manslaughter (CALCRIM 571).

Appellant contends that it was error not to instruct on provocation because Ramirez was mad that people were saying that appellant gave him a black eye at the birthday party. Ramirez allegedly said, "Does it look like I have a fuckin' black eye? I don't have no fuckin' black eye. I'll fuckin' blast you." Ramirez backed up and reached for what appellant thought was a gun. Appellant claimed that he feared for his life and swung the knife at Ramirez. Appellant's testimony dwelt on self-defense, not heat of passion due to provocation. The jury was properly instructed on justifiable homicide based on reasonable self-defense and imperfect self-defense voluntary manslaughter. (CALCRIM 505, 571; *People v. Wickersham* (1982) 32 Cal.3d 307, 327-328.)

---

of passion. [¶] . . . [¶] I don't see evidence rising to the level to give [an instruction] under heat of passion."

Appellant argues that provocation is a subjective test and that the jury should have been instructed that provocation may reduce first degree murder to second degree murder.[4] (*People v. Padilla* (2002) 103 Cal.App.4th 675, 678.) Provocation means " 'to incite to anger' " to such an extent that it gives rise to a rash, impulsive decision. (*People v. Hernandez, supra,* 183 Cal.App.4th at p. 1334.) But that is not the same as self-defense or imperfect self-defense, i.e., evidence that appellant subjectively believed that he was in imminent danger of being killed or suffering great bodily injury.

The trial court correctly ruled that appellant's fear of being shot went to the issue of self-defense, not provocation. (See *People v. Avila* (2009) 46 Cal.4th 680, 707 [where substantial evidence of provocation is lacking, trial court does not err in refusing to instruct on provocation to reduce the degree of murder].) To instruct on provocation there must be substantial evidence that appellant acted rashly and under the influence of intense emotion that obscured his judgment. (See e.g., *People v. Enraca* (2012) 53 Cal.4th 735, 759 [insults or gang-related challenges not sufficient provocation to instruct on voluntary manslaughter].) The fundamental "inquiry is whether or not the defendant's reason was, at the time of his act, so disturbed by some passion - not necessarily fear and never, of course, the passion for revenge - to such an extent as would [cause appellant] to act rashly or without due deliberation and reflection, and from this passion rather than from judgment.' [Citation.]" (*People v. Berry* (1976) 18 Cal.3d 509, 515.)

When Ramirez allegedly threatened to "blast" appellant, appellant was three to four feet away. Appellant said that Ramirez was "rowdy" and kept asking "Why are people talking shit?" Ramirez was mad, held his hands up with palms open, and stepped back when appellant drew his knife.

---

[4] "[A] subjective test applies to provocation as a basis to reduce malice murder from the first to the second degree: it inquires whether the defendant in fact committed the act because he was provoked. The rationale is that provocation may negate the elements of premeditation, deliberateness and willfulness that are required for that degree of the crime. [Citation.]" (*People v. Jones* (2014) 223 Cal.App.4th 995, 1000; see 1 Witkin & Epstein, Cal. Criminal Law, Crimes Against the Person (4th ed. 2012) § 125, p. 922.)

In *People v. Moye* (2009) 47 Cal.4th 537 (*Moye*), our Supreme Court held that a heat of passion instruction is not required every time "a defendant is attacked and consequently fears for his life." (*Id.*, at p. 555 [defendant bludgeoned victim to death with baseball bat and claimed self-defense; instruction on heat of passion voluntary manslaughter not required].) The same principle applies here. Adequate provocation must be affirmatively demonstrated. (*People v. Lee* (1999) 20 Cal.4th 47, 60.) Appellant stated that "I tried to calm [Ramirez] down and he wasn't listening to me." The evidence shows that appellant responded to the threat in a rational defensive manner, not in a passion-inflamed fury. (*Moye*, *supra,* 47 Cal.4th at p. 554.) There was no evidence that appellant was so provoked that "emotion . . . obliterate[d] [his] reason. . . ." (*People v. Johnston* (2003) 113 Cal.App.4th 1299, 1311.)

Assuming, arguendo, that the trial court erred in not instructing on provocation, the error was harmless. (*Moye, supra,* 47 Cal.4th at p. 555 [applying *People v. Watson* (1956) 46 Cal.2d 818 harmless error standard.) The jury was instructed on justifiable homicide, self-defense and imperfect self-defense and that it must determine "whether the defendant's belief in the need to use deadly force was reasonable." (CALCRIM 571.)

The factual scenario that appellant posits for a provocation instruction, i.e., that he stabbed Ramirez out of fear of being shot, was rejected by the jury. "Once the jury rejected [appellant's] claims of reasonable and unreasonable self-defense, there was little if any independent evidence remaining to support [appellant]'s further claim that he killed in the heat of passion, and no direct testimonial evidence from defendant himself to support an inference that he *subjectively* harbored such strong passion, or acted rashly or impulsively while under its influence for reasons unrelated to his perceived need for self-defense." (*Moye, supra,* 47 Cal.4th at p. 557.)

The jury here was instructed: "A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated." (CALCRIM 521.) It was instructed that "[t]he People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime. If the People have not

8

met this burden, you must find the defendant not guilty of first degree murder and the murder is second degree murder." (CALCRIM 521.)

The evidence was sufficient to establish a willful, premeditated and deliberate murder. By finding appellant guilty of first degree murder, the jury necessarily resolved against appellant the argument that he acted in the heat of passion due to provocation. (*Moye, supra,* 47 Cal.4th at p. 557; see e.g., *People v. Wharton* (1991) 53 Cal.3d 522, 572 [finding of premeditation and deliberation is "manifestly inconsistent with having acted under the heat of passion"].) The failure to instruct on provocation was harmless under any standard of review. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710] [harmless beyond a reasonable doubt]; (*Moye*, *supra,* 47 Cal.4th at p. 556 [harmless error]; *People v. Breverman* (1998) 19 Cal.4th 142, 177-178.) Appellant makes no showing that he was denied a fair trial or denied the due process right to present a complete defense. (*People v. Rogers* (2006) 39 Cal.4th 826, 871-872.)

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

9

Patricia L. Kelly, Judge

Superior Court County of Santa Barbara

_____

Robert L. S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven E. Mercer, Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.