Filed 9/15/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059299 |
| v. | (Super. Ct. No. 06CF2893) |
| ANTONIO ALEJANDRO BARBOZA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Michael J. Cassidy, Judge. Reversed and remanded.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Lynne G. McGinnis and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　\*　　\*

In 2008, defendant Antonio Alejandro Barboza was initially convicted of first degree murder with a gang special circumstance. The trial court reduced the conviction to second degree murder, struck the special circumstance, and sentenced defendant to 15 years to life plus 25 years to life for the murder and a vicarious firearm enhancement. On direct appeal, we affirmed the judgment. (*People v. Barboza* (Aug. 10, 2009, G040266) [nonpub. opn.] (*Barboza I*).)

In June 2019, defendant filed a petition for resentencing in the trial court pursuant to Penal Code section 1170.95.[1] Counsel was appointed to represent defendant. The court subsequently found defendant had not set forth a prima facie case for relief because the jury's special circumstance finding required that defendant personally harbored an intent to kill. We find, however, that the court erred by using the jury's findings as to first degree murder with the special circumstance, as the court struck those findings and entered a conviction for second degree murder at the time of sentencing. Accordingly, defendant presented a prima facie case for relief and is entitled to a hearing on his 1170.95 petition. We reverse, and on remand, we direct the court to issue the appropriate order to show cause.

I

FACTS

*Underlying Facts*

A full recitation of the facts can be found in *Barboza I*. In brief, a stabbing incident occurred on September 11, 2006, which resulted in the death of Oscar Gonzalez. A juvenile witness, Abel H., who testified under a grant of immunity, told the police that he had witnessed defendant and Sergio Gonzalez (Gonzalez), the victim's brother, discuss "payback." Gonzalez had a gun and stated he was going to kill someone. Abel,

---

[1] Subsequent statutory references are to the Penal Code.

2

Gonzalez, and defendant were all members of the same gang, Little Minnie Street. (*Barboza I*, *supra*, G040266.)

Abel told the police his gang did not get along with the We Don't Care (WDC) gang. He stated that five members of his gang, including himself, defendant, and Gonzalez, approached the victim's vehicle. Gonzalez shot the victim, identified by police as Sam Chea, three times. Chea was a WDC gang member. The shooting was also witnessed by a former WDC member, Phany Sam. (*Barboza I*, *supra*, G040266.)

The police also interviewed defendant. "Defendant said in the interview that when Gonzalez 'came home from the hospital, he went to a location within his residence and got what [defendant] believed was a gun.' As defendant walked toward the scene with the group, he heard Gonzalez say he was going to 'blast those fools.' [A gang homicide detective reported] defendant said he was at the scene of the shooting 'to exact . . . revenge for what had happened to the victim of a stabbing.' He told the detectives 'he knew that there would most likely be a shooting' and that it would be in retaliation for Oscar Gonzalez's stabbing. Defendant admitted to the detectives he was there 'to backup Sergio.' Defendant said that backup means that when you see someone getting in trouble, 'you're going to help them out.'" (*Barboza I*, *supra*, G040266.)

A police officer testified at trial that the persons arrested for the stabbing of Oscar Gonzalez were members of another gang, one that was, in fact, allied with the Little Minnie Street gang. Further, the officer stated, the shooting of Chea was "payback" for "perceived disrespect." (*Barboza I*, *supra*, G040266.)


*Procedural History*

Defendant was charged with first degree murder (§ 187, subd (a), count one) and street terrorism (§ 186.22, subd. (a), count two). Various enhancements were alleged, including the special circumstance that the murder was committed for a street gang purpose (§ 190.2, subd. (a)(22)), the vicarious discharge of a firearm causing death

3

(§ 12022.53, subds. (d), (e)(1)), and that the crime had been committed for the benefit of a street gang (§ 186.22 subd. (b)).

The court instructed the jury on, among other things, aiding and abetting, liability for coconspirators acts in an uncharged conspiracy under a natural and probable consequences theory, and express and implied malice.

The jury returned verdicts finding defendant guilty of counts one and two, first degree murder and active participation in a street gang. It also found the charged enhancements true, including the special circumstance and vicarious firearm enhancement. The gang special circumstance required a finding that defendant intended to kill the victim.

Defendant filed a motion for "judgment notwithstanding verdict"[2] and a motion for a new trial. The trial court issued a tentative ruling stating it was inclined to reduce the jury's finding of first degree murder to second degree and to strike the special circumstance. Gonzalez, the court noted, had been convicted of second degree murder with a finding that he had personally used a firearm. The jury in defendant's case was instructed on conspiracy and a natural and probable consequences theory, and it found defendant guilty without specific findings as to whether they had reached their verdict as to premeditation and deliberation, conspiracy, or a natural and probable consequences theory. The court was of the opinion, therefore, that based on Gonzalez's conviction for second degree murder as the actual killer, defendant's conviction must also be reduced to second degree. Both parties submitted on the tentative ruling.

Accordingly, the trial court reduced defendant's conviction to second degree murder and struck the special circumstance finding. The jury's verdict as to the gang activity count remained.

---

[2] This was an improper motion. "A motion for a judgment notwithstanding the verdict is unknown in criminal law proceedings." (*People v. Morgan* (1977) 75 Cal.App.3d 32, 39.)

4

The trial court sentenced defendant to 40 years to life based on the second degree murder count and the vicarious firearm enhancement. The court sentenced defendant to two years on the gang count to run concurrently. This court affirmed the judgment based on the sufficiency of the evidence. (*Barboza I*, *supra*, G040266.)

On June 11, 2019, defendant filed a petition for resentencing pursuant to section 1170.95. The trial court appointed counsel and both parties submitted briefing. The court determined defendant was not eligible for resentencing and denied the petition. Defendant now appeals.

II

DISCUSSION

*Statutory Framework*

The Legislature adopted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Sen. Bill No. 1437) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see § 189, subd. (e).) Senate Bill No. 1437 therefore amended sections 188 and 189 to limit the natural and probable causes doctrine and the felony-murder rule. (See §§ 188, 189, subd. (e).) "The amendments to sections 188 and 189 together change the felony murder rules and the 'natural and probable consequences theory' when convicting a participant in a felony for murder, but who did not actually kill the victim." (*In re White* (2019) 34 Cal.App.5th 933, 937, fn. 2.) A person is not eligible for relief under section 1170.95 if he or she was convicted under a theory of direct aider and abettor liability. (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137.)

5

Additionally, Senate Bill No. 1437 enacted section 1170.95. Under subdivision (a) of section 1170.95, a person convicted of first or second degree murder may petition a trial court for resentencing "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."

Procedurally, there are multiple steps in a petition under section 1170.95. First, the petitioner must include a declaration that states he or she is eligible for relief, the petition must also include the case number, date of conviction, and state whether the petitioner requests appointment of counsel. (§ 1170.95, subd. (b)(1)(B), (C).)

If the petition complies with these requirements, the court appoints counsel. (*People v. Lewis* (July 26, 2021, S260598) __ Cal.5th __ [ 2021 WL 3137434] (*Lewis*).) The court then evaluates the petition to determine if it makes a prima facie showing that relief is available, and if so, it issues an order to show cause. (§ 1170.95, subd. (c).) At the prima facie stage, the court may use the record of conviction to determine if the petitioner qualifies for relief. (*Lewis*, at p. *10.)

At this stage of the proceeding, "'"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."'" (*Lewis*, *supra*, 2021 WL 3137434 at p. *10.) "[A] trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id*. at p. *11.) "[T]he 'prima facie bar was intentionally and correctly set very low.'" (*Ibid.*)

6

*Use of the Jury's Original Findings*

At the hearing on the section 1170.95 petition, the trial court stated: "Based on the record, the jury was instructed on first degree premeditated murder as well as the special circumstance that was alleged. The jury found the defendant guilty of first degree murder under—looking at the special circumstance, the jury had to make the finding that he had the requisite intent to kill and they made that finding, finding him guilty of first degree murder on an aiding and abetting theory, not under a natural consequence theory. [¶] He's not eligible for resentencing. The Petition is denied."

Had the trial court not reduced defendant's conviction to second degree murder and struck the special circumstance, the proper analysis would have been whether the requisite facts as set forth in the record of conviction supported the court's decision to deny defendant's petition. (*Lewis, supra,* 2021 WL 3137434 at p. *10.) But that is not what happened here. Defendant's conviction was reduced and the special circumstance was stricken.

Accordingly, the key dispute here is whether the trial court properly considered what the jury originally decided, or whether it should have looked only at the ultimate judgment rendered by the court. As this question of statutory interpretation is an issue of law, our review is de novo. (*People v. Galvan* (2008) 168 Cal.App.4th 846, 852.)

Defendant contends the trial court was statutorily authorized to reduce his conviction for first degree murder to second degree and strike the special circumstance enhancement, citing section 1181, subdivision (6). That statute permits the court to modify a verdict without granting a new trial when it finds "the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein." (§ 1181, subd. (6).) "This provision authorizes the trial court to exercise its independent judgment as to the sufficiency of the evidence to support the jury's verdict or finding, even to the extent

7

of resolving conflicts in the evidence in a manner different from the jury's implicit findings. It authorizes the trial court to reweigh the evidence." (*People v. Johnston* (2003) 113 Cal.App.4th 1299, 1307.) This modification allows the court to bring "the jury's verdict in line with the evidence presented at trial."[3] (*People v. Navarro* (2007) 40 Cal.4th 668, 679.)

Once the trial court reduced the verdict from first degree murder to second degree and struck the special circumstance, defendant argues, the jury's findings were a nullity and simply no longer existed as a matter of law. Defendant cites section 1180, which states that granting a new trial places the parties in the same position as if no trial had taken place. By analogy, he contends, the same rules should apply when the court reduces the offense without granting a new trial.

The Attorney General cites *People v. Robinson* (2016) 63 Cal.4th 200, 206-207, for the proposition that the jury's findings survive the trial court's reduction of defendant's conviction under section 1181, subdivision (6). The issue before the *Robinson* court was whether misdemeanor sexual battery was "a lesser included offense of sexual battery by misrepresentation of professional purpose." (*Robinson*, at p. 204.) In discussing the trial court's ability under section 1181, subdivision (6), to find a defendant guilty of a lesser included offense without granting a new trial, the court stated the limitation on finding defendant guilty only of such an offense was based on due process considerations: "The reviewing court corrects the verdict '"not by finding or changing any fact, but by applying the established law to the existing facts *as found by the jury.*"'" (*Robinson*, at pp. 206-207.) The court was referring to the facts necessary to

---

[3] The Attorney General argues the trial court's belief that there was insufficient evidence to support defendant's first degree premeditated murder based on the outcome of Gonzalez's trial was "mistaken." While this may be true, the court's decision is final at this point. If the prosecution believed the court was incorrect, it could have filed an appeal at the time. (§ 1238, subd. (a)(6).) It did not.

8

find a defendant guilty of a lesser included offense, not every factual determination made by the jury.

This context is made crystal clear by the trial court's quotation, which is from *People v. Cowan* (1941) 44 Cal.App.2d 155. In that case, the issue was whether section 1181, subdivision (6), constituted a violation of the Fourteenth Amendment's due process clause. (*Cowan*, at pp. 161-162.) In essence, the defendant's argument in *Cowan* was that it was improper for the court, rather than a jury, to find him guilty of a lesser included offense. The court rejected this argument: "Not only has due process of law in this regard been here followed and applied, but it is also true that in finding the appellants guilty of murder in the first degree the jury necessarily found against them on every fact involved in and necessary to finding them guilty of murder in the second degree. Even in the first place, the jury was not free to fix either degree as a matter of mere discretion or choice resting with them, but it was their duty to fix it in accordance with the facts as disclosed by the evidence. Their error in performing that duty could be and was corrected on appeal, not by finding or changing any fact, *but by applying the established law to the existing facts as found by the jury*, the correction itself being in favor of and beneficial to the appellants." (*Id.* at p. 162, italics added.)

Thus, we reject the Attorney General's contention that the "reduction of [an] offense under section 1181, subd[ivision] 6 does not . . . permit reinterpretation of facts found by the jury." The quotation the Attorney General relies on refers only to the facts necessary to find defendant guilty of a lesser included offense. As there is no question "that '[s]econd degree murder is a lesser included offense of first degree murder'" (see *People v. Taylor* (2010) 48 Cal.4th 574, 623), *People v. Robinson*, *supra*, 163 Cal.4th 200, that is not relevant here.

The Attorney General offers no other authority for the proposition that a jury's collateral findings survive after the trial court has reduced the defendant's offense. While there is no authority directly on point, similar principles in other cases have led us

9

to reject the Attorney General's proposition. In *People v. Park* (2013) 56 Cal.4th 782, the trial court held that a felony, after it was properly reduced to a misdemeanor under section 17, subdivision (b), did not qualify as a "prior serious felony" for purposes of imposing a five-year sentence enhancement under section 667, subdivision (a), even when the defendant had initially pleaded guilty to the felony. (*Park*, at pp. 795-798.) "[G]iven that it was well established at the time section 667(a) was enacted that when a trial court reduced a wobbler to a misdemeanor under section 17(b) the offense was not thereafter to be considered a felony conviction for purposes of a recidivist statute, and given the absence of any indication in section 667(a) of an intention to depart from this general rule, we conclude that when a wobbler has been reduced to a misdemeanor the prior conviction does not constitute a prior felony conviction within the meaning of section 667(a)." (*Id.* at p. 799.) Thus, the court found it was improper to revive a felony reduced to a misdemeanor for the purpose of imposing a harsher sentence on a defendant in the future.

Also in the context of sentencing enhancements, in *People v. Flores* (2021) 63 Cal.App.5th 368, 383, the appellate court held it was error for the trial court to use an enhancement stricken under section 1385 to calculate a defendant's minimum indeterminate sentence. Under section 1385, a court has authority to strike the additional punishment or to strike the enhancement altogether. "If a judge strikes the enhancement, it's as if the fact of the enhancement never existed—it will not remain on the defendant's criminal record nor will it affect them in any potential future sentencing." (*Flores*, at p. 383; see *People v. Buycks* (2018) 5 Cal.5th 857 [using statutory enhancement principles, prior felony conviction reduced to misdemeanor cannot be used prospectively for enhancement purposes].)

We agree with the *Flores* court's unequivocal language on this point. Reducing the degree of a crime and striking a special circumstance means that in the eyes of the law, the original findings never existed. Once a jury's finding is stricken, it is

10

stricken. And once a conviction is reduced, and that decision is final, it is reduced for all purposes.

Thus, we agree with defendant that the jury's decision to convict on first degree murder and the special circumstance finding are nullities and cannot foreclose the possibility of relief under section 1170.95. The defendant was convicted of second degree murder, sentenced for second degree murder, and he is serving time for second degree murder. What the jury found prior to the court's decision to set aside the first degree verdict and the special circumstance finding simply has no legal effect.

Defendant also argues, and we agree, that using the first degree verdict or the special circumstance finding in the context of his section 1170.95 petition would be unfair because he never had the opportunity to challenge those findings on appeal. By the time he briefed his appeal, those issues were moot based on the trial court's decision to reduce the conviction to second degree murder and to strike the special circumstance. We agree. He never had the chance to raise any legal errors or to contest the sufficiency of the evidence on these points, which is yet another reason those findings should not have been used by the court in the context of defendant's 1170.95 petition.

We simply do not and cannot know what theory or theories the jury relied on based on the record of conviction, and we decline the Attorney General's invitation to engage in speculation. If the record of conviction does not conclusively demonstrate that the defendant "engaged in the requisite acts and had the requisite intent" to be convicted on a theory of murder that remains valid, denying relief at the prima facie stage is improper. The trial court must issue an order to show cause and hold the prosecution to its burden of proving said acts and intent beyond a reasonable doubt at an evidentiary hearing. (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815.)

Accordingly, we return to the standards set by our Supreme Court in *People v. Lewis.* Those standards prohibit fact finding or the weighing of evidence by the trial court at the prima facie stage and note "the 'prima facie bar was intentionally and

correctly set very low.'" (*Lewis*, *supra*, 2021 WL 3137434 at p. *11.) We find that based on the record of conviction, which must disregard any findings by the jury that contradict the court's decision to reduce defendant's conviction to second degree murder, defendant's allegations, *if proved*, demonstrate he was entitled to relief. Accordingly, an order to show cause should have been issued in this matter. (*Id*. at p. *10.) We therefore reverse and remand for further proceedings.

## III

## DISPOSITION

The court's order is reversed and the matter is remanded for further proceedings consistent with this opinion.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

12