Filed 7/22/16  P. v. Patton CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B261807 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA409232) |
| v. | |
| MICHAEL PATTON, | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County. Mildred Escobedo, Judge.  Affirmed.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Nathan Guttman, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Michael Patton appeals from his conviction by jury of attempted first degree murder, along with several related felonies. Defendant received a third strike sentence of 60 years to life. He raises claims of insufficient evidence, instructional and sentencing error, and asks this court to review the proceedings regarding his pretrial motion for discovery pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). Defendant also filed, in propria persona, a petition for habeas corpus (case No. B262100) which we resolve by separate order.

Finding no merit to defendant's contentions, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant was charged by information with five felonies: possession of a firearm by a felon (Pen. Code, §§ 29800, subd. (a)(1), 29900, subd. (a)(1); counts 1 and 2); possession of ammunition by a felon (§ 30305, subd. (a)(1); count 3); attempted murder (§§ 187, subd. (a), 664; count 4); and assault with a firearm (§ 245, subd. (a)(2); count 5). It was alleged as to count 4 that defendant personally used and discharged a firearm causing great bodily injury in the commission of the offense (§§ 12022.5, subd. (a), 12022.7, subd. (a), and 12022.53, subds. (b)-(d)). As to count 5, it was alleged defendant personally used a firearm causing great bodily injury in the commission of the offense (§§ 12022.5, subd. (a), 12022.7, subd. (a)). As to all counts, it was alleged defendant had suffered two prior serious or violent felonies (§§ 667, subds. (a)(1), (b)-(i), 1170.12).

The charges arose from an incident that occurred on March 20, 2013, near the Los Angeles Mission in the skid row neighborhood of downtown Los Angeles. The testimony and evidence received at trial revealed the following material facts.

David Johnston is homeless and frequents the area around the Los Angeles Mission located at the intersection of East 5th Street and Wall Street. He is a "street performer" who "panhandl[es]" for "tips." He is four feet six inches tall. At around 6:00 a.m. on March 20, Mr. Johnston was near the Los Angeles Mission standing on the sidewalk along 5th Street. Several other individuals were there as well, including defendant. Defendant is an amputee who uses a motorized scooter to get around.

2

After exchanging words, defendant shot Mr. Johnston five times (two shots to his chest, one in the back, one to his right hand, and one to his hip). Mr. Johnston ran down the street to the corner. A woman passing by called 911. Mr. Johnston was taken to Los Angeles County + USC Medical Center to be treated for his injuries.

Detective Louis Farias of the Los Angeles Police Department was assigned to investigate the shooting. Based on information received during the investigation, Detective Farias, along with several other officers, went to the Harold Hotel located a short distance from the Los Angeles Mission to look for a possible suspect. They went to the room where defendant resided and found defendant, along with his motorized scooter, inside the room.

Pursuant to a warrant obtained a few hours later, Detective Farias recovered a "nickel plated revolver with an ivory grip," some ammunition, and approximately $6,000 in cash from defendant's room. Detective Farias also retrieved the video footage from the surveillance cameras located on the outside of the hotel, as well as some footage from cameras located on the exterior of the Los Angeles Mission.

Officer Deon Joseph, a veteran officer who worked the skid row area, was also assigned to the investigation of the shooting. From his 17 years working in the neighborhood, Officer Joseph had developed relationships in the community, particularly with the homeless population, and was familiar with both defendant and Mr. Johnston. He knew defendant often sold cigarettes illegally on the street and had issued him several warnings not to do so.

Shortly after the shooting, Officer Joseph went to the hospital to try to speak with Mr. Johnston. Mr. Johnston seemed groggy and was uncooperative, which Officer Joseph did not find surprising because, in his experience, homeless people and others who reside near skid row are often reluctant to speak with law enforcement even when they are the victims of crime. Mr. Johnston remained uncooperative and would not talk to Officer Joseph when he returned a short time later.

The next day (March 21), Officer Joseph returned to the hospital a third time to obtain a statement from Mr. Johnston about what had happened. He recorded the

3

conversation but did not advise Mr. Johnston that he was doing so, believing he would be reluctant to speak truthfully about the incident if he knew he was being recorded. Mr. Johnston was still a little groggy, but coherent and able to have a conversation. Officer Joseph did not have any trouble understanding him.

Officer Joseph told Mr. Johnston the detectives might be able to help him with his probation and receive witness protection, but they needed his help because they had someone in custody but needed Mr. Johnston to identify the shooter, if possible. Mr. Johnston said "I know who it is" and "I know how the guy looks." Mr. Johnston said he was standing outside the mission with several other people where defendant "was selling alcohol, cigarettes and beer, and he didn't want me standing there. When I told him, I am going to stand there. He said 'You better leave right now, or I'm going to shoot you.' " Mr. Johnston said he couldn't believe defendant actually shot him. Mr. Johnston told Officer Joseph that "[h]e shot me in the back when I turned to run."

A six-pack photographic lineup card had been prepared by Detective Farias with defendant's photograph in position number six. When Officer Joseph showed Mr. Johnston the six-pack, he said he recognized everyone. Mr. Johnston expressed concern that if he pointed out the shooter, and people were going to be in court, then people would know he had pointed out the shooter. Mr. Johnston said he would not circle anyone's photograph or sign anything. Officer Joseph told him to just point to the correct photograph. Mr. Johnston pointed to defendant with "his pinky finger." He then asked Officer Joseph, "[i]s that who you got in custody? Wheelchair ass dude. Ride around in a wheelchair."

At trial, Mr. Johnston said he did not want to testify. He had tried to avoid being served with a subpoena to appear. Mr. Johnston said he did not know who shot him, but that it was not defendant. He claimed the shooter was actually someone about six feet tall. He said he had never spoken to any officers at the hospital. Mr. Johnston said he did not want to get hurt or in trouble for lying about who shot him.

Mr. Johnston's recorded statement to Officer Joseph was played for the jury, as was the video footage from the exterior security cameras on the Harold Hotel and the Los

Angeles Mission. The black and white footage from the Harold Hotel shows the sidewalk and fencing alongside the Los Angeles Mission. Several individuals are standing on the sidewalk near a tree, including a man of short stature and a man in a motorized scooter. The short man is close to the curb with his back to the street. The man in the scooter is facing away from the camera. It appears that the man using the scooter and the short man are conversing at times. Suddenly, the short man and another individual start to run up the street, away from the direction of the camera. The man in the scooter briefly appears to head in the direction of the short man, but then he abruptly turns the scooter around and drives down the sidewalk in the opposite direction and out of view. The other individuals who had been standing around on the sidewalk leave the area.

The color footage from the Los Angeles Mission shows a man running up the sidewalk, to the corner and out of view. The person is dressed in a red shirt, a dark hat and jeans, and clutches his chest as he runs. The person is dressed exactly as described by the woman who called 911. A recording of the 911 call was played for the jury. Mr. Johnston acknowledged during his testimony that he is the person shown running up the sidewalk.

Defendant did not testify in his own defense and did not call any witnesses. Defendant stipulated he had suffered a prior felony conviction for purposes of counts 1 through 3.

The jury found defendant guilty on all five counts. In a bifurcated proceeding, the court found true that defendant had suffered two prior convictions for assault with a firearm (Pen. Code, § 245, subd. (a)(2)), one in 1993 and the other in 2000.

At the sentencing hearing, the court acknowledged receipt of the sentencing memoranda from both defense counsel and the prosecution, as well as defendant's motion to strike pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). Before any argument took place, defendant requested to proceed without counsel and the court took defendant's waiver of counsel on the record in accordance with *Faretta v. California* (1975) 422 U.S. 806.

The court granted in part and denied in part defendant's *Romero* motion. The court struck defendant's two prior strikes with respect to counts 1 through 3, but denied the motion as to counts 4 and 5.

The court sentenced defendant as a third-strike offender to a term of 60 years to life, calculated as follows: 25 years to life on count 4, the base term, plus a consecutive term of 25 years to life for the firearm enhancement pursuant to Penal Code section 12022.53, subdivision (d), plus 10 years for the two priors pursuant to section 667, subdivision (a)(1). The court imposed and stayed sentence, pursuant to section 654, on the remaining counts. Defendant was awarded 717 days of custody credits.

This appeal followed. On February 24, 2015, defendant filed, in propria persona, a petition for a writ of habeas corpus. This court forwarded a copy of the petition to defendant's appointed appellate counsel and ordered the petition (case No. B262100) to be considered in conjunction with this appeal. Respondent requested transmittal of the trial exhibits to be included in the appellate record. On December 18, 2015, this court received from the superior court one envelope of trial exhibits, including the video and audio recordings of the surveillance video, the 911 call and Mr. Johnston's statement at the hospital. Upon review of the record, it was discovered that the transcripts related to defendant's *Pitchess* motion were not included. On our own motion, we ordered the record augmented and directed the superior court to prepare and transmit the transcripts of the proceedings dated August 26 and 27, 2013. On June 17, 2016, we received the sealed transcripts.

On June 24, 2016, we granted defendant's request to file a supplemental letter brief, clarifying that the substantial evidence argument raised as to count 4 also applied to count 5. Respondent did not file a responsive brief. On the day before oral argument, we granted defendant's request to file a second supplemental letter brief arguing instructional error and ineffective assistance of counsel with respect to the omission of CALCRIM No. 358. Respondent filed a supplemental opposition letter brief, and defendant filed a reply brief.

## DISCUSSION

**1.       The Instruction on Attempted Voluntary Manslaughter**

Defendant contends the court erred by refusing his requested instruction on attempted voluntary manslaughter, a lesser included offense to attempted murder.  We review a claim of instructional error de novo.  (*People v. Alvarez* (1996) 14 Cal.4th 155, 217.)  We find no error.

The court's obligation to instruct on all principles of law relevant to the issues raised by the evidence at trial includes the obligation to instruct " 'on any lesser offense "necessarily included" in the charged offense, if there is substantial evidence that only the lesser crime was committed.' [Citation.]" (*People v. Smith* (2013) 57 Cal.4th 232, 239; accord, *People v. Bradford* (1997) 15 Cal.4th 1229, 1344-1345.)  "An instruction on a lesser included offense *must be given only when the evidence warrants such an instruction*. [Citation.]  To warrant such an instruction, there must be substantial evidence of the lesser included offense, that is, 'evidence from which a rational trier of fact could find beyond a reasonable doubt' that the defendant committed the lesser offense.  [Citation.]  Speculation is insufficient to require the giving of an instruction on a lesser included offense." (*People v. Mendoza* (2000) 24 Cal.4th 130, 174, italics added.)

Attempted voluntary manslaughter is a lesser included offense of attempted murder.  (*People v. Van Ronk* (1985) 171 Cal.App.3d 818, 824-825.)  An attempted murder may be reduced to attempted voluntary manslaughter where the evidence shows an attempted intentional killing without malice.  Absence of malice may be shown either by evidence the defendant acted in a sudden quarrel or heat of passion, or in the unreasonable but good faith belief of having to act in self-defense.  (See *People v. Barton* (1995) 12 Cal.4th 186, 199 (*Barton*).)

Defendant contends he was entitled to an instruction on sudden quarrel/heat of passion (CALCRIM No. 603).  An instruction on sudden quarrel/heat of passion is warranted where there is substantial evidence the defendant was " 'disturbed by passion to such an extent as would cause the *ordinarily reasonable person of average disposition to act rashly* and without deliberation and reflection . . . .' " (*Barton*, *supra*, 12 Cal.4th at

7

p. 201, italics added.)  The " 'provocation which incites the defendant to homicidal conduct in the heat of passion *must be caused by the victim* [citation] or be conduct reasonably believed by the defendant to have been engaged in by the victim.' " (*People v. Johnston* (2003) 113 Cal.App.4th 1299, 1311, italics added; accord, *People v. Carasi* (2008) 44 Cal.4th 1263, 1306 [for defense to apply victim must "taunt" the defendant "or otherwise initiate the provocation"].)  " 'The provocation must be such that an average, sober person would be so inflamed that he or she would lose reason and judgment. Adequate provocation and heat of passion must be affirmatively demonstrated.' " (*Johnston*, *supra*, at pp. 1311-1312.)

We find no evidence whatsoever, let alone substantial evidence, that the shooting was provoked by Mr. Johnston or that defendant was guilty only of the lesser offense of attempted voluntary manslaughter.  Mr. Johnston's statement to Officer Joseph was that he was standing near defendant while he was selling cigarettes and other items to individuals on the sidewalk.  Mr. Johnston said defendant told him to leave or he would shoot him.  When Mr. Johnston did not leave, defendant shot him twice in the chest, at nearly point blank range, once in the back as he ran away, plus once each in the hand and in the hip.  The black and white video footage, while not clearly showing a gun as defendant's back is to the camera, appears to corroborate Mr. Johnston's version of the incident.  There was no evidence of any kind that Mr. Johnston acted in a provocative way towards defendant before the shooting.

## 2.    CALCRIM No. 358

Defendant contends that at the time of trial in 2014, the court had a sua sponte duty to instruct with CALCRIM No. 358 whenever a defendant's extrajudicial statement was at issue, and that the court failed to so instruct the jury.  Alternatively, defendant contends that even if the court did not have a duty to instruct, defense counsel provided ineffective assistance by asking the court to withdraw the instruction from the packet of instructions the court had prepared to give the jury and to not give the instruction.

During discussions with counsel about jury instructions, the court asked defense counsel if he wanted to request modification of the proposed instructions and defense

counsel said that CALCRIM No. 358 should be excluded because he did not "think there [was] any evidence [defendant] made any statements." The court agreed to remove the instruction from the packet. Shortly thereafter while the parties were discussing whether an instruction on voluntary manslaughter would be appropriate, the prosecutor read from the transcript of Mr. Johnston's pretrial statement to Officer Joseph at the hospital in which he relayed that defendant told him, just before the shooting, to leave the area or "I am going to shoot you." Defense counsel responded, "[i]f I missed that I apologize." The discussion then continued about whether the evidence supported an instruction on voluntary manslaughter, but the issue of CALCRIM No. 358 was not revisited.

CALCRIM No. 358 provides: "You have heard evidence that the defendant made [an] oral or written statement[s] (before the trial/while the court was not in session). You must decide whether the defendant made any (such/of these) statement[s], in whole or in part. If you decide that the defendant made such [a] statement[s], consider the statement[s], along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the statement[s]. [¶] [Consider with caution any statement made by (the/a) defendant tending to show (his/her) guilt unless the statement was written or otherwise recorded.]"

In 2014, when this case went to trial, the trial court had a sua sponte duty to give CALCRIM No. 358 whenever evidence of an extrajudicial oral statement by the defendant was presented by the prosecution to prove the defendant's guilt. (*People v. Miranda* (2015) 236 Cal.App.4th 978, 990 (*Miranda*).)

In 2015, the Supreme Court held in *People v. Diaz* (2015) 60 Cal.4th 1176, 1187 (*Diaz*) that CALCRIM No. 358 applied in cases involving criminal threats, but otherwise concluded "it is more appropriate to permit defendants to determine whether to request the instruction than to require the trial judge to give it in every case." (*Diaz,* at p. 1192.) The *Diaz* court declined to decide the issue of retroactivity. (*Miranda*, *supra*, 236 Cal.App.4th at p. 990.)

We need not resolve whether the court erred in granting defense counsel's request to not instruct the jury with CALCRIM No. 358, because any instructional error was

harmless under the state law standard for error enunciated in *People v. Watson* (1956) 46 Cal.2d 818, 835-836. (See *People v. Salazar* (2016) 63 Cal.4th 214, 251 (*Salazar*) [concluding state law standard of error applies to alleged failure to give cautionary instruction]; *Diaz, supra*, 60 Cal.4th at p. 1195 [same].)

Because CALCRIM No. 358 "is intended to help the jury to determine whether the statement attributed to the defendant was in fact made, courts examining the prejudice in failing to give the instruction examine the record to see if there was any conflict in the evidence about the exact words used, their meaning, or whether the admissions were repeated accurately." (*People v. Dickey* (2005) 35 Cal.4th 884, 905.) Where there is no conflict in the evidence, but rather, simply a denial by the defendant of the statement attributed to him or her, the failure to give the instruction has been held harmless. (See, e.g., *Dickey,* at p. 906; *Diaz, supra*, 60 Cal.4th at pp. 1196-1197; *People v. Bunyard* (1988) 45 Cal.3d 1189, 1224-1225; *Miranda, supra*, 236 Cal.App.4th at pp. 990-991.)

The record demonstrates unequivocally there was no factual dispute about the words attributed to defendant by Mr. Johnston just prior to the shooting. Moreover, the jury was properly instructed with CALCRIM No. 226 concerning witness credibility and the relevant factors to consider in evaluating witness testimony. " '[W]hen the trial court otherwise has thoroughly instructed the jury on assessing the credibility of witnesses, we have concluded the jury was adequately warned to view their testimony with caution.' [Citations.]" (*Diaz, supra*, 60 Cal.4th at p. 1196 [finding harmless the failure to give the cautionary instruction where jury was instructed with CALCRIM No. 226 and there was no factual conflict as to the statement attributed to the defendant]; accord, *Salazar, supra*, 63 Cal.4th at pp. 250-251 [concluding the same as to CALJIC No. 2.71.7, the predecessor instruction to CALCRIM No. 358].)

Here, the jury heard the testimony of Officer Joseph regarding Mr. Johnston's pretrial statement and identification of defendant as the shooter, as well as the audio recording of that statement which includes the statement that just prior to the shooting defendant told Mr. Johnston to leave or he was going to shoot him. They heard fairly detailed testimony from Mr. Johnston about his desire not to testify, his fear of retaliation

10

on the street, and his claim that the shooter was not defendant but rather someone who was "six feet tall." Both the prosecutor and defense counsel emphasized the inconsistencies in Mr. Johnston's testimony and the possible reasons underlying those inconsistencies, and the jury's need to carefully evaluate his testimony. As already noted above, the jury was instructed with CALCRIM No. 226. Defendant has not shown that an additional instruction advising the jury to view extrajudicial oral statements by defendant with caution would have resulted in a more favorable verdict to defendant.

Defendant's ineffective assistance claim fails for the same reasons. The burden is on defendant to establish ineffective assistance by a preponderance of the evidence. (*People v. Ledesma* (1987) 43 Cal.3d 171, 218.) A defendant "must show both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Cudjo* (1993) 6 Cal.4th 585, 623, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-696.) On direct appeal, this burden is stringent. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.) We cannot say that no reasonably competent attorney would have asked the court to not give CALCRIM No. 358 in this case. As the Supreme Court recognized in *Diaz*, "[t]he cautionary instruction does not reflect a legal principle with which jurors would be unfamiliar absent the instruction, and the defendant may not always want the instruction to be given." (*Diaz, supra,* 60 Cal.4th at p. 1189.) Moreover, defendant cannot demonstrate that it is reasonably probable he would have obtained a more favorable result had the instruction been given.

### 3. The Evidence Supporting Counts 4 and 5

Defendant next argues there is insufficient evidence supporting the jury's findings he committed attempted premeditated murder or assault with a firearm. Our task is to "review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) "Reversal

11

on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331; accord, *People v. Manriquez* (2005) 37 Cal.4th 547, 577 (*Manriquez*).) We conclude the record contains solid evidence in support of the verdict.

Defendant contends the evidence is insufficient to establish he was the shooter, that he had the requisite intent to kill, or to establish premeditation. Defendant argues the video does not show clearly who is in the motorized scooter, and does not show a gun or who shot Mr. Johnston. He further argues the incident happened very quickly and that, at trial, Mr. Johnston denied defendant was the shooter, testifying instead that the person who shot him was six feet tall.

In *People v. Anderson* (1968) 70 Cal.2d 15, 26-27, the Supreme Court "identified three types of evidence—evidence of planning activity, preexisting motive, and manner of killing—that assist in reviewing the sufficiency of the evidence supporting findings of premeditation and deliberation." (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1069 (*Mendoza*).) However, the court made clear "that ' "*Anderson* did not purport to establish an exhaustive list that would exclude all other types and combinations of evidence that could support a finding of premeditation and deliberation." [Citations.]' " (*Ibid.*; accord, *People v. Perez* (1992) 2 Cal.4th 1117, 1125, and *Manriquez*, *supra*, 37 Cal.4th at p. 577.)

Further, "it is well settled that intent to kill or express malice, the mental state required to convict a defendant of attempted murder, may in many cases be inferred from the defendant's acts and the circumstances of the crime. [Citation.] 'There is rarely direct evidence of a defendant's intent. Such intent must usually be derived from all the circumstances of the attempt, including the defendant's actions.' " (*People v. Smith* (2005) 37 Cal.4th 733, 741.)

Defendant, a convicted felon, was carrying a loaded firearm in public. Defendant told Mr. Johnston he did not like having Mr. Johnston standing near where he was selling alcohol, cigarettes and beer. When Mr. Johnston told him he was not going to leave, defendant said "You better leave right now, or I'm going to shoot you." Mr. Johnston did

not leave, and defendant shot him at close range twice in his chest, a vital area of the body; conduct which could easily have resulted in a lethal injury. Defendant also shot Mr. Johnston in the back as he ran away. The video footage shows defendant pursuing Mr. Johnston as he fled, before defendant turns his scooter around and heads in the opposite direction, fleeing the scene. "The act of shooting a firearm toward a victim at close range in a manner that could have inflicted a mortal wound had the shot been on target is sufficient to support an inference of an intent to kill." (*People v. Houston* (2012) 54 Cal.4th 1186, 1218; see also *Manriquez*, *supra*, 37 Cal.4th at p. 577 [" '[t]he process of premeditation and deliberation does not require any extended period of time' "], and *People v. Brito* (1991) 232 Cal.App.3d 316, 323-324 [fact that the defendant made decision, within a matter of a few seconds, to shoot fleeing victim in back did not defeat finding of deliberation].) We find it hard to imagine that, with this evidence, any reasonable juror could entertain a reasonable doubt that defendant deliberately and with premeditation intended to kill Mr. Johnston. The same evidence plainly supports the jury's finding that defendant committed an assault with a firearm.

Finally, defendant is correct that, at trial, Mr. Johnston denied that he had identified defendant as the shooter and testified that the person who shot him was not in a motorized scooter but was actually six feet tall. However, Mr. Johnston also testified in some detail about his fear of retaliation on the street for identifying the shooter. Given the ample evidence that corroborated Mr. Johnston's recorded statement, the jury was entitled to give credit to Mr. Johnston's pretrial statement and the corroborating evidence, over his denials at trial about the true identity of the shooter.

### 4.    The *Romero* Motion

Defendant contends the court erred in denying his *Romero* motion with respect to count 4. We disagree.

We review a court's ruling on a *Romero* motion under the deferential abuse of discretion standard. (*People v. Williams* (1998) 17 Cal.4th 148, 162 (*Williams*); accord, *People v. Carmony* (2004) 33 Cal.4th 367, 375-376 (*Carmony*) [holding abuse of discretion standard applies to review of a trial court's decision declining to strike a prior

strike].)  A trial court is " ' "presumed to have acted to achieve legitimate sentencing objectives" ' " and the decision to impose a particular sentence will not be set aside unless an affirmative showing is made that the sentence is irrational or arbitrary. (*Carmony*, at pp. 376-377.)  "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*Id*. at p. 377.)

The court granted defendant's *Romero* motion in part, striking the prior strikes for sentencing purposes as to counts 1, 2, and 3.  However, the court denied the motion as to counts 4 and 5.  The court acted within its discretion in denying the motion as to some counts.  (*People v. Garcia* (1999) 20 Cal.4th 490, 503-504 [trial court may, consistent with the Three Strikes law, exercise its discretion "to dismiss a prior conviction allegation with respect to one count, but not with respect to another"].)

In exercising its discretion whether to strike a prior strike allegation, the court considers various factors, including the nature and circumstances of the defendant's present felonies and prior convictions, the defendant's background, character, and prospects, and whether the defendant may properly be deemed outside the spirit of the Three Strikes law.  (*Williams*, *supra*, 17 Cal.4th at p. 161.)  The Three Strikes law creates a sentencing norm and "carefully circumscribes the trial court's power to depart from this norm."  (*Carmony*, *supra*, 33 Cal.4th at p. 378.)  "[T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Ibid*.)

Defendant concedes he has two prior strikes for serious felonies under the Three Strikes law, both for assault with a firearm in violation of Penal Code section 245, subdivision (a)(2); one conviction was in 1993, the other in 2000.  Defendant's criminal record also includes two convictions for possession for sale of marijuana, two convictions for resisting an officer, and a conviction for assault with a deadly weapon by a prisoner. While defendant had not had a conviction for several years preceding the shooting of Mr. Johnston, the record nonetheless demonstrates a history of violent criminal conduct

14

throughout defendant's adult life. Defendant has not affirmatively shown an abuse of discretion by the trial court in declining to strike the strikes as to counts 4 and 5.

**5.     The Eighth Amendment Claim**

Defendant argues his sentence amounts to cruel and unusual punishment and violates the Eighth Amendment on the following grounds: (1) Penal Code section 12022.53, subdivision (d) is facially unconstitutional as it fails to recognize gradations of culpability; and (2) the statute is unconstitutional as applied to defendant because it mandates a grossly disproportionate sentence relative to the offense.

"Whether a punishment is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts must be viewed in the light most favorable to the judgment." (*People v. Martinez* (1999) 76 Cal.App.4th 489, 496 (*Martinez*).) We do not find defendant's sentence violates the Eighth Amendment.

Defendant's facial challenge to Penal Code section 12022.53, subdivision (d) is unpersuasive. Defendant contends the failure of the statute to recognize gradations in culpability results in a mandatory, "draconian" enhancement of 25 years to life for use of a firearm regardless of the circumstances of the shooting. Defendant acknowledges that at least two courts have rejected the argument, but argues those decisions were "wrongly decided and should not be followed." We disagree. We believe the analysis and holdings of *Martinez, supra,* 76 Cal.App.4th 489 and *People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1214-1215 are correct on the issue before us. (See also *People v. Alvarez* (2001) 88 Cal.App.4th 1110, 1114-1119 [citing *Martinez* with approval in rejecting equal protection challenge to § 12022.53, subd. (d)].)

As *Martinez* aptly explains: "[Penal Code] Section 12022.53 as a whole represents a careful gradation by the Legislature of the consequences of gun use in the commission of serious crimes. The section is limited, in the first place, to convictions of certain very serious felonies. The statute then sets forth three gradations of punishment based on increasingly serious types and consequences of firearm use in the commission of the designated felonies: 10 years if the defendant merely used a firearm, 20 years if the defendant personally and intentionally discharged it, and 25 years to life if the

15

defendant's intentional discharge of the firearm proximately caused great bodily injury." (*Martinez*, *supra*, 76 Cal.App.4th at p. 495.)

Defendant's as-applied challenge is equally unavailing. The Eighth Amendment, which forbids cruel and unusual punishments, contains a " 'narrow proportionality principle' that 'applies to noncapital sentences.' [Citation.]" (*Ewing v. California* (2003) 538 U.S. 11, 20 [affirming sentence of 25 years to life imposed on a third-strike offender convicted of felony grand theft for the theft of $1,200 worth of merchandise].) The Eighth Amendment prohibits only a sentence that is "grossly disproportionate" to the severity of the charged crime(s). (*Ewing,* at p. 21.) Outside the context of a capital sentence, " 'successful challenges to the proportionality of particular sentences have been exceedingly rare.' [Citation.]" (*Ibid*.)

"A sentence violates the state prohibition against cruel and unusual punishment (Cal. Const., art. I, §§ 6, 17) if ' "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience." ' [Citations.] [¶] A sentence violates the federal Constitution [(U.S. Const., 8th & 14th Amends.)] if it is 'grossly disproportionate' to the severity of the crime." (*People v. Russell* (2010) 187 Cal.App.4th 981, 993.)

Here, defendant had suffered two prior convictions for assault with a firearm. In the charged offense, the evidence showed that defendant threatened to shoot Mr. Johnston for no reason other than that defendant did not want Mr. Johnston to stand near him on the sidewalk. There was no evidence of provocative behavior by Mr. Johnston. Defendant then shot at Mr. Johnston at close range five times, including once in the back as Mr. Johnston tried to flee. It was a violent crime carried out by an individual with a violent criminal history. Defendant has not demonstrated that the sentence is disproportionate to the offense or otherwise shocks the conscience.

## 6. The *Pitchess* Motion

Defendant asks this court to review the sealed proceedings, as well as the actual personnel records reviewed by the trial court, related to his *Pitchess* motion and to determine whether any discoverable materials were wrongfully withheld. Respondent does not object to our review of the sealed transcripts.

In August 2013, defendant moved pretrial to discover any relevant personnel records related to Detective Farias and Officer Joseph. The supporting declaration of counsel asserts that Detective Farias and Officer Joseph conducted an illegal search of defendant's hotel room, against defendant's denial of consent and before a search warrant was obtained; illegally seized various items; and stole some money recovered from a duffle bag in defendant's room. The trial court granted defendant's motion in part, ordering that as to both Detective Farias and Officer Joseph, any complaints pertaining to perjury or preparation of false police reports, as well records concerning any response or discipline imposed following any investigation of such complaints, were to be turned over to the defense.

The in camera hearing held August 27, 2013, was transcribed by a court reporter, the custodian of records was placed under oath, and the record of proceedings was sealed. We have independently reviewed the sealed transcript of the in camera proceedings and are satisfied the court did not abuse its discretion in ruling on defendant's motion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1230; see also *People v. Myles* (2012) 53 Cal.4th 1181, 1209 [where records reviewed by trial court in camera are adequately specified in sealed transcript to afford meaningful appellate review, then review of actual records is unnecessary].)

### DISPOSITION

The judgment of conviction is affirmed.


GRIMES, J.

WE CONCUR:

BIGELOW, P. J.



FLIER, J.


17