Filed 3/30/21  P. v. Bronson CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH JEREMY BRONSON,<br><br>    Defendant and Appellant. | B300902<br><br>(Los Angeles County<br>Super. Ct. No. NA106148) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Laura L. Laesecke, Judge.  Affirmed and remanded with directions.

Stephen Michael Vasil, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In an information filed by the Los Angeles District Attorney's Office, defendant and appellant Joseph Jeremy Bronson was charged with one count of murder (Pen. Code, § 187, subd. (a); count 1)[1] and one count of attempted murder (§§ 664/187, subd. (a); count 2). As to both counts, it was alleged that defendant personally and intentionally discharged a firearm and personally used a firearm pursuant to section 12022.53, subdivisions (b) through (d).

Defendant pled not guilty. After trial, the jury found defendant guilty of second degree murder and willful, deliberated, premediated attempted murder. It also found true the firearm enhancements as to both counts. The trial court sentenced defendant to 72 years to life in state prison. He was given 867 days of presentence custody credit.

Defendant timely appealed. On appeal, he argues: (1) the trial court erred by failing to instruct the jury on heat of passion voluntary manslaughter; (2) his conviction for premeditated attempted murder should be reversed because the premeditated enhancement was not pled in the accusatory pleadings; and (3) he is entitled to one additional day of presentence custody credit.

We agree with the parties that defendant is entitled to one additional day of presentence custody credit. In all other respects, the judgment is affirmed.

**FACTUAL AND PROCEDURAL BACKGROUND**

I. *Prosecution Evidence*

At around 4:00 p.m. on March 7, 2017, Maricela Polanco Fernandez (Fernandez) was working the drive-thru line at the Louis Burger on Atlantic Avenue in Long Beach. Defendant, who

_____

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

2

was driving a burgundy BMW, was a customer in the drive-thru line. Erika Flores (Flores) and her boyfriend Trevor McCrainey (McCrainey) were on their way to Petco with their two dogs, who were in the back of their Toyota Corolla, when they decided to stop at Louis Burger to pick up some food. They pulled into the drive-thru line and placed their order. Defendant's BMW, which had a license plate on it, was in front of them.

As McCrainey drove forward, he was distracted by one of the dogs and picked his foot up off the break. The car rolled forward and bumped into defendant's BMW. McCrainey reversed his car. Defendant exited his car and checked if it had any damage. McCrainey said to defendant, "'My bad. Are you good? My bad, bro.'" Defendant responded, "'Nah, fuck that'" and "'On gang,'" and then called McCrainey "ugly." Defendant did not say anything about any damage to his car nor did he ask McCrainey for his driver's license or insurance information. Defendant returned to his car and drove up to the drive-thru window.

Fernandez could see the two men arguing. Defendant paid for his food—French fries and a strawberry soda—and Fernandez handed it to him. Defendant threw a water bottle at the Corolla and then he threw his strawberry soda at the car. The soda hit the front of the Corolla and some of the liquid spilled into the driver's side window, staining McCrainey's T-shirt and pants.

Defendant exited the drive-thru lane, turned right onto Atlantic Avenue and drove south. McCrainey drove up to the drive-thru window, but he did not stop to get his food. Instead, he followed defendant's car onto Atlantic Avenue. The BMW stopped at a red light at Atlantic Avenue and Broadway. McCrainey drove up alongside defendant's car, got out of his car, and approached the driver's side of defendant's car. McCrainey

3

said to defendant, "'Come on,'" "'Get out of the car,'" and "'Let's go.'"  Defendant did not respond.  While the light was still red, defendant made a right turn onto Broadway, driving the wrong way on the one-way street.  McCrainey slammed his hands on the BMW's trunk as the car drove off.  He got back into the Corolla.  Flores told him that they should go home so he could change his clothes and they could then go to Petco.  McCrainey made a U-turn and started to drive home.

McCrainey made a left turn onto Third Street.  He saw defendant's BMW and followed it into an alley, Liberty Court.  McCrainey was not yelling or making any gestures out the window, and he did not have a weapon.  Defendant stopped his car in the middle of the alley; there was no room for McCrainey to drive around so he stopped behind it.  Defendant got out of his car.  He had a gun in his hand and pointed it at McCrainey, who tried to put the car in reverse but put it in neutral by mistake.  McCrainey said, "'Oh no. We gone.'"  Defendant pulled the trigger on the gun, but nothing happened.  He cocked it back to put a bullet in the chamber and began to shoot at McCrainey as he walked toward the Corolla.  When defendant reached the open driver's side window, he fired four shots at McCrainey, including an execution-style shot to the back of McCrainey's head.

While defendant was standing at the driver's side window, Flores was trying to shield McCrainey's face with her foot.  Defendant pointed the gun at her and shot her in the leg through the open window.  He also shot Flores in the chest.  Defendant did not say anything to McCrainey or Flores.  His gun eventually ran out of bullets, and then he walked back to his car and drove away.

Denise Kelch (Kelch) was on the balcony of her second-story motel room when she heard gun fire. The balcony faced Liberty Court. She saw defendant's car and the Corolla in the alley and saw defendant get out of his car and walk towards the other car as he fired a gun. According to Kelch, defendant fired at the windshield as he walked to the car, and he fired the final shots as he stood at the driver's side door. Defendant then quickly walked back to his car. He threw the gun inside the car, got in, and drove straight down the alley towards Third Street. Kelch assisted Flores. She called an ambulance and stayed with her until the police and paramedics arrived.

McCrainey was slumped over in the driver's seat, unresponsive; he died at the scene. Flores had injuries to her right breast, her side, and her left leg. The paramedics transported her to the hospital.

Deputy Medical Examiner Job Augustine performed an autopsy on McCrainey. The manner of death was homicide, and the cause of death was three penetrating gun wounds to McCrainey's head. McCrainey suffered a fourth, nonfatal gunshot wound to his right upper lip.

Defendant was arrested on April 4, 2017. During a search of his home, the police found the license plates for defendant's car on top of a pile of clothes.

II. *Defense Evidence*

Defendant did not testify or present any witnesses.

5

**DISCUSSION**

I. *No Instructional Error*

Defendant contends that the trial court erred in failing to instruct the jury sua sponte on heat of passion voluntary manslaughter.[2]

A. <u>Relevant law</u>

A trial court must instruct on lesser included offenses when there is substantial evidence the defendant is guilty only of the lesser offense. (*People v. Vargas* (2020) 9 Cal.5th 793, 827.) "Voluntary manslaughter, a lesser included offense of murder, is defined as the unlawful killing of a human being without malice." (*Ibid.*, citing § 192 & *People v. Rios* (2000) 23 Cal.4th 450, 465.) An instruction on voluntary manslaughter is required where there is substantial evidence that the defendant acted in the heat of passion. A heat of passion killing "is one caused by an unconsidered reaction to provocation rather than the result of rational thought." (*People v. Vargas*, at p. 828.) "If reason ""was obscured or disturbed by passion"" to so great a degree that an ordinary person would ""act rashly and without deliberation and reflection,"" [then it can be said that the] killing arose from ""passion rather than from judgment."" [Citation.]" (*Id.* at p. 828; accord *People v. Landry* (2016) 2 Cal.5th 52, 97 ["heat of passion sufficient to reduce murder to manslaughter 'exists only where the "killer's reason was actually obscured as the result of a strong passion . . .""].)

"'[T]he anger or other passion must be so strong that the defendant's reaction bypassed his thought process to such an

---

[2]      The jury was instructed on voluntary manslaughter based on an imperfect self-defense.

6

extent that judgment could not and did not intervene.' [Citation.]" (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 649.) "'"'[I]f sufficient time has elapsed for the passions of an ordinarily reasonable person to cool, the killing is murder, not manslaughter.'"' [Citation.]" (*Ibid.*; *People v. Nelson* (2016) 1 Cal.5th 513, 539 ["it is not sufficient that a person 'is provoked and [then] later kills'"].) "'"The provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim [citation], or be conduct reasonably believed by the defendant to have been engaged in by the victim.'" [Citation.]" (*People v. Beck and Cruz, supra*, at p. 649.) Planned revenge does not satisfy the provocation requirement. (*People v. Souza* (2012) 54 Cal.4th 90, 115–117; *People v. Breverman* (1998) 19 Cal.4th 142, 163 [the passion aroused can be any extreme emotion "other than revenge"].)

In other words, a heat of passion theory of manslaughter has an objective and subjective component. (*People v. Moye* (2009) 47 Cal.4th 537, 549 (*Moye*).) "'"To satisfy the objective or 'reasonable person' element of this form of voluntary manslaughter, the accused's heat of passion must be due to 'sufficient provocation.'" [Citation.]' [Citation.]" (*Moye, supra*, at p. 549.) "The provocative conduct by the victim may be physical or verbal, but the conduct must be sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection." (*Id.* at p. 550.) "To satisfy the subjective element of this form of voluntary manslaughter, the accused must be shown to have killed while under 'the actual influence of a strong passion' induced by such provocation." (*Ibid.*)

7

Normally, a heat of passion instruction supplements a self-defense instruction.  Nonetheless, a heat of passion "instruction is not always warranted." (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1138.)

We review this issue de novo.  (*People v. Souza, supra,* 54 Cal.4th at p. 116.)

B.  <u>Analysis</u>

Applying these legal principles, we conclude that the trial court did not err; it did not have a sua sponte duty to instruct on heat of passion voluntary manslaughter.  There was no evidence of either the subjective or objective element of heat of passion voluntary manslaughter.  Certainly the shooting occurred after a skiff escalated between defendant and McCrainey.  But, instead of driving away or seeking help, defendant trapped McCrainey in an alley before exiting his vehicle, walking to McCrainey's car, and then firing his weapon multiple times at both McCrainey and Flores.

Urging us to reverse, defendant argues that McCrainey's behavior would have "cause[d] a reasonable person to act rashly and without due deliberation and reflection as a result of fear, anger, anxiety, confusion, or panic, or some other overwhelming emotion."  We are not convinced.

*People v. Johnston* (2003) 113 Cal.App.4th 1299, 1312 (*Johnston*) is instructive.  In that case, the defendant armed himself with a knife and went to his girlfriend's house to speak with her.  He arrived early in the morning and pounded on the door, walls, and windows, demanding that she come out.  Her mother told the defendant to leave.  Enraged, he shouted obscenities, threatened to kill the entire family, and refused to leave.  He repeatedly challenged the ex-girlfriend's brothers to

8

come out and fight.  Unarmed, one brother exited the house and a fight ensued.  During the fight, the defendant pulled out a knife and repeatedly stabbed the brother, killing him.  (*Johnston*, *supra*, 113 Cal.App.4th at p. 1302.)

Despite being instructed on a host of lesser included crimes, the jury convicted the defendant of second degree murder.  (*Johnston*, *supra*, 113 Cal.App.4th at p. 1302.)  But the trial court reduced the crime to voluntary manslaughter based on sudden quarrel/heat of passion.  (*Ibid*.)  The appellate court reversed and reinstated the murder conviction.  (*Id*. at p. 1303.)  In so doing, the appellate court reasoned:  "We may assume that defendant did not travel to his ex-girlfriend's residence for the purpose of committing a homicide, even though he armed himself with a knife before going there.  But it was he who instigated the fight with [the brother] by creating a loud disturbance at the residence, cursing the mother of the victim and girlfriend and, most particularly, challenging [the brother] to come out and fight.  Having done that, he cannot be heard to assert that he was provoked when [the brother] took him up on the challenge.  Defendant was 'culpably responsible' for the altercation."  (*Johnston*, *supra*, 113 Cal.App.4th at p. 1313.)

Similarly, here the evidence was undisputed that defendant said that McCrainey was "ugly" and then threw a water bottle and cup of soda at McCrainey's car.  McCrainey took defendant's behavior as an insult and responded "in resentment."  (*Johnston*, *supra*, 113 Cal.App.4th at p. 1312.)  Defendant's aggressive and taunting behavior may not have justified McCrainey's chase after defendant or his challenge to fight, but "neither does [McCrainey's behavior] justify or mitigate defendant's use of deadly force" (*Johnston*, *supra*, at p. 1313), particularly when

9

defendant armed himself, giving him the upper hand in any potential fight (*id*. at p. 1312).

Furthermore, there was insufficient evidence that defendant actually acted in the heat of passion (subjective element) or that a reasonable person would have acted in the heat of passion (objective element) in these circumstances. There was little to no evidence in the record that defendant subjectively acted under the heat of passion. He offered no evidence that he believed the shooting was necessary to defend his life, that he fired out of fear, or that he appeared fearful, and no witnesses testified about his demeanor. (See *Moye*, *supra*, 47 Cal.4th at p. 557 [noting that defendant provided no direct testimony to support an inference he subjectively harbored strong passions during killing]; *People v. Lee* (1999) 20 Cal.4th 47, 60 ["Adequate provocation and heat of passion must be affirmatively demonstrated"].) While the record showed that defendant ran a red light and drove the wrong way down a one-way street after McCrainey confronted him at the traffic light, this evidence is thin at best. Indeed, if defendant had been in fear for his safety, he could have driven to the police station, which was just seven or eight blocks away, to get help. Instead, he chose to leave a busy public street where he was relatively safe and drive down an isolated alley where he could (and did) confront McCrainey without any witnesses. And defendant parked his car in the alley in such a manner to ensure that McCrainey could not escape. These actions demonstrate that defendant had a plan to trap McCrainey and confront him, not that defendant acted in the heat of passion.

Moreover, defendant calmly approached the Corolla, shooting through the windshield three times. McCrainey did not

10

brandish a weapon or attempt to defend himself. When defendant reached the open driver's side window, he fired four shots at McCrainey, including an execution-style shot to the back of McCrainey's head. He did not wildly fire at McCrainey or Flores; rather, he fired at vital areas of both victims' bodies. Again, this behavior overwhelmingly demonstrated that defendant was not acting out of "fear, anger, anxiety, confusion, or panic, or some other overwhelming emotion." Rather, the evidence shows that defendant knew exactly what he was doing. (See *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 295 ["The manner of killing—a close-range shooting without any provocation or evidence of a struggle—. . . supports an inference of premeditation and deliberation"]; *People v. Koontz* (2002) 27 Cal.4th 1041, 1082 [firing at vital area at close range supported finding of premeditation and deliberation]; *People v. Mayfield* (1997) 14 Cal.4th 668, 767, overruled in part on other grounds in *People v. Scott* (2015) 61 Cal.4th 363, 390, fn. 2 [shooting victim in the face supports inference of preexisting intent to kill].)

There was also insufficient evidence that defendant's shooting of McCrainey and Flores was objectively reasonable. Defendant may well have been concerned about, or angered by McCrainey's behavior, but McCrainey never threatened to harm defendant or brandished any weapons. McCrainey's act of getting out of his car and saying, "Let's go" was not sufficient provocation to satisfy the objective standard. (See, e.g., *People v. Lucas* (1997) 55 Cal.App.4th 721, 739 [insufficient provocation where driver laughed and a backseat passenger looked at him "'real dirty, like he wanted to fight or something'"]; *People v. Manriquez* (2005) 37 Cal.4th 547, 585 [insufficient evidence of

11

provocation where victim repeatedly called defendant a "mother fucker" and taunted him to use his weapon].)

It follows that we reject defendant's argument that the trial court's failure to instruct on heat of passion voluntary manslaughter violated his constitutional rights.

C. <u>Harmless error</u>

Assuming arguendo that it was error for the trial court to have failed to instruct the jury on a heat of passion theory of voluntary manslaughter in addition to the instructions that were given on imperfect self-defense manslaughter, that error was harmless under any standard. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *Chapman v. California* (1967) 386 U.S. 18, 24.)

It is reasonable to assume that the jury considered and rejected any theory that defendant lacked malice when it declined to convict defendant of imperfect self-defense voluntary manslaughter. "Once the jury rejected defendant's claims of reasonable and imperfect self-defense, there was little if any independent evidence remaining to support his further claim that he killed [McCrainey] in the heat of passion, and no direct testimonial evidence from defendant himself to support an inference that he *subjectively* harbored such strong passion, or acted rashly or impulsively." (*Moye, supra,* 47 Cal.4th at p. 557.) The jury necessarily considered and rejected the notion that defendant was in imminent danger or that use of deadly force was necessary. (CALJIC No. 5.17.) Instead, the jury found, based upon the evidence, that defendant intentionally and methodically discharged his gun several times to shoot and kill McCrainey.

Because the jury acquitted defendant of first degree murder under theories of lying in wait and premeditation and instead

12

convicted him of second degree murder, defendant suggests that the jury might have found that he acted in the heat of passion had that instruction been given. We are not convinced. Unlike the cases cited by defendant, as set forth above, there was no evidence at trial regarding defendant's state of mind. (Compare *In re Hampton* (2020) 48 Cal.App.5th 463, 480–481 [the defendant testified that he fired when the victim lunged at him and did so without thinking because he was scared].)

Defendant further argues that the failure to give this instruction was prejudicial because it embodied a defense theory of the case. After all, defense counsel "argued that [defendant's] fear, anxiety, or stress was provoked by McCrainey's pursuit and caused his emotions to overwhelm his judgment, leading him to lose his self-control."

But that was just one theory that defense counsel argued counsel did not "structure[] the entire defense around one element," and the failure to instruct on heat of passion voluntary manslaughter did not "strike[] at the heart of the defense." (*People v. Vasquez* (2018) 30 Cal.App.5th 786, 799.)

Finally, we note that defendant immediately fled the scene after the shooting and removed the license plates from his car. This is strong circumstantial evidence showing consciousness of guilt. (*People v. Mason* (1991) 52 Cal.3d 909, 941.)

II. *Failure to Allege Premeditation and Deliberation in the Attempted Murder Charge*

Defendant argues that the life sentence imposed for attempted murder must be reversed because the felony complaint and information failed to allege premeditation and deliberation pursuant to section 664, subdivision (a).

A.  Relevant facts

The felony complaint and the information charged defendant with attempted murder in count 2.  Neither included an allegation that the attempted murder was willful, deliberate, and premeditated.

The trial court and the parties had several discussions concerning the jury instructions during the trial.  At one point, the trial court provided counsel with a "working copy" of the instructions.  During the next jury instruction conference, the trial court asked the parties if they wanted to have "any other general discussions of instructions?", noting that both attorneys were not familiar with the CALJIC instructions, which the trial court intended to use.  The trial court commented, "I consider this to be a basic packet of CALJIC."  Defense counsel responded that he and cocounsel would look at the instructions that day.  At the conclusion of the discussion, the trial court remarked:  "We will make sure we go over the jury instructions in the more final form tomorrow afternoon."  Neither party posed any questions or expressed any concerns about the instructions.

The following day, the parties went through the individual instructions.  With respect to the instruction on the attempted murder charge, the trial court indicated that it would instruct with CALJIC No. 8.66 (attempted murder), CALJIC No. 8.67 (willful, deliberate, and premeditated attempted murder), and CALJIC No. 3.31 (concurrence of act and specific intent).  In fact, the trial court stated, "So it's attempted murder and premeditation and deliberation, which is the special allegation on attempted murder."  Defense counsel did not object to the characterization of the attempted murder charge, and when the trial court asked if there were any other discussions they needed

14

to have about the instructions, defense counsel responded, "No, your Honor."

Without objection, the trial court instructed the jury with CALJIC No. 8.67 as follows: "It is also alleged in count 2 that the crime attempted was willful, deliberate, and premeditated murder. If you find the defendant guilty of attempted murder, you must determine whether this allegation is true or not true.

"'Willful' means intentional.

"'Deliberate' relates to how a person thinks, and means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.

"'Premeditated' relates to when a person thinks and means considered beforehand.

"A person premeditates by deliberating before taking action.

"If you find that the attempted murder was preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is an attempt to commit willful, deliberate, and premeditated murder.

"The law does not undertake to measure in units of time the length of the period during which the thought must be pondered before it can ripen into an intent to kill which is truly deliberate and premeditated. The time will vary with different individuals and under varying circumstances.

"The true test is not in the duration of time, but rather the extent of the reflection. A cold, calculated judgment and decision

15

may be arrived at in a short period of time, but a mere unconsidered and rash impulse, even though it includes an intent to kill, is not deliberation and premeditation.

"To constitute willful, deliberate, and premeditated attempted murder, the would-be slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to kill and makes a direct but ineffectual act to kill a[nother] human being.

"The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true.

"You will include a special finding on that question in your verdict using a form that will be supplied for that purpose."

After the case was submitted to the jury, the trial court stated, "My understanding is that both sides have looked at the verdict forms and given your approval." Defense counsel and the prosecutor approved of the forms.

The jury found true the allegation that the attempted murder was committed willfully, deliberately, and with premeditation. Without objection, the trial court sentenced defendant to a consecutive life term (plus a 25-year firearm enhancement) on the attempted murder count.

B. Forfeiture

Pursuant to *People v. Houston* (2012) 54 Cal.4th 1186 (*Houston*), defendant has forfeited this objection.

In *Houston*, the defendant was charged with, among other crimes, 10 counts of attempted murder. (*Houston*, *supra*, 54 Cal.4th at p. 1226.) The charging indictment failed to allege that the attempted murders were deliberate and premeditated. (*Ibid*.)

16

But, the issue came up three times during trial without objection from the defense.

The first time was during presentation of the defense case. The trial court presented the parties with a preliminary draft of the verdict forms, indicating that the jury would be asked to determine if the attempted murders were willful, deliberate, and premeditated. The trial court stated that it believed that that was the prosecution's theory and therefore findings on that issue would increase the defendant's sentence to life imprisonment. The trial court asked the parties if its understanding was correct. Defense counsel did not object. (*Houston*, *supra*, 54 Cal.4th at p. 1226.)

The second time was approximately a week later when the trial court announced it would submit verdict forms on the theory of premeditated attempted murder. Again, defense counsel did not object. (*Houston*, *supra*, 54 Cal.4th at p. 1226.)

Last, after the close of evidence, the trial court instructed the jury. It defined attempted murder and told the jury that if it found that the defendant had committed attempted murder, the jury was to determine if the attempted murder was willful, deliberate, and premeditated. Again, defense counsel did not object to use of those instructions. (*Houston*, *supra*, 54 Cal.4th at p. 1226.)

Ultimately, the jury found that the 10 attempted murders had been willful, deliberate, and premeditated. (*Houston*, *supra*, 54 Cal.4th at pp. 1191, 1226.)

On appeal, the defendant asserted that the findings had to be set aside. He urged that his "due process right to fair notice of the allegations that [would] be invoked to increase" his punishment had been violated (*Houston*, *supra*, 54 Cal.4th at

17

p. 1227) because the indictment failed to comply with the pleading requirements of section 664, subdivision (a). (*Houston*, *supra*, at pp. 1225–1229.) The California Supreme Court rejected that contention. After reviewing the three instances during trial in which the defense had been informed that the jury would be called upon to determine whether the attempted murders were willful, deliberate, and premeditated, the *Houston* court concluded: "Had defendant raised a timely objection to the jury instructions and verdict forms at any of these stages of the trial on the ground that the indictment did not allege that the attempted murders were deliberate and premeditated, the court could have heard arguments on whether to permit the prosecutor to amend the indictment. [Citation.] If the trial court was inclined to permit amendment, defendant could have requested a continuance to permit him to prepare a defense. [Citation.] On the facts here, defendant received adequate notice of the sentence he faced, and the jury made an express finding that the attempted murders were willful, deliberate, and premeditated. A timely objection to the adequacy of the indictment would have provided an opportunity to craft an appropriate remedy. Because defendant had notice of the sentence he faced and did not raise an objection in the trial court, he has forfeited this claim on appeal. [Citation.]" (*Houston*, *supra*, 54 Cal.4th at pp. 1227–1228.)

The same reasoning applies here. Defendant did not object to either the trial court's instruction on the attempted murder count or the verdict form, which required the jury to decide whether the allegation that the attempted murder was willful, deliberate, and premeditated was true. (*People v. Toro* (1989) 47 Cal.3d 966, 976, fn. 6 (*Toro*) ["An objection to jury verdict forms is

18

generally deemed waived if not raised in the trial court"], disapproved on other grounds in *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3; *People v. Bolin* (1998) 18 Cal.4th 297, 330 ["We find no objection of record to the form of the verdict either at the time the court proposed to submit it or when the jury returned its finding.  The issue is therefore waived"].)  If defendant had objected to the jury instruction or the verdict form, the trial court could have considered whether to allow the prosecutor to amend the information.

Furthermore, defendant did not object when the verdict on the attempted murder count was announced or when the jury was polled on its verdicts.  He also did not object when the trial court sentenced him on the attempted murder count.

Under these circumstances, defendant cannot now complain of a violation of his constitutional right to notice. (*Houston*, *supra*, 54 Cal.4th at pp. 1227–1228; *People v. Bright* (1996) 12 Cal.4th 652, 671 ["where defendant failed to object at trial to the adequacy of the notice he received, any such objection is deemed waived"], overruled on another ground in *People v. Seel* (2004) 34 Cal.4th 535, 550, fn. 6; *People v. Valenzuela* (2011) 199 Cal.App.4th 1214, 1237–1238 [defense consent to inclusion of section 190, subdivision (d), allegation without amendment of the information forfeited claim of inadequate notice].)

Urging us to reverse, defendant argues that his case is distinguishable from *Houston* because he "did not receive adequate notice that the prosecution would seek to use the premeditation enhancement to increase his sentence for an attempted murder conviction."  We disagree.  Defendant's case is not materially distinguishable from *Houston*. If the People, in response to a timely defense objection, had filed another

19

information with the required allegations, defendant would simply have been arraigned on the new pleading. The new allegations would have been read to him, but there is no requirement that he be informed of their potential effect on his sentence. (4 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Pretrial Proceedings, §§ 252, 257, pp. 516–517, 522.)

Defendant's reliance upon *People v. Arias* (2010) 182 Cal.App.4th 1009 (*Arias*) to support a contrary conclusion is misplaced in light of the subsequent *Houston* decision. In *Arias*, the defendant was charged with two counts of attempted murder. The information did not allege that the attempted murders were willful, deliberate, and premeditated. Nonetheless, the trial court instructed the jury that if it convicted the defendant of the attempted murders, it was to determine whether those crimes were done willfully and with premeditation and deliberation. The jury convicted the defendant of two "'first degree attempted murder[s],'" and the trial court imposed a life term for those convictions. (*Arias*, *supra*, 182 Cal.App.4th at p. 1017.)

On appeal, the defendant asserted that his life sentences were unauthorized and imposed in violation of due process because the prosecution failed to allege, as required by section 664, subdivision (a), that the attempted murders were committed willfully, deliberately, and with premeditation. The Court of Appeal agreed, rejecting the People's argument that the defendant had forfeited his objection by failing to raise the point below. (*Arias*, *supra*, 182 Cal.App.4th at pp. 1017–1020.)

The *Houston* court found that it "need not and [did] not decide whether the *Arias* court erred in ruling that the defendant there did not forfeit his claim that the [information] was inadequate." (*Houston*, *supra*, 54 Cal.4th at p. 1229.) Instead,

20

*Houston* distinguished *Arias*: "The *Arias* jury was instructed that if it found the defendant guilty of attempted murder, it must determine whether the attempted murder was willful, deliberate, and premeditated, and the defendant did not object to that instruction. But it is unclear when the trial court issued its proposed jury instructions and verdict forms to the parties and whether this issue was discussed. In contrast, the trial court here [in *Houston*] actually notified defendant of the possible sentence he faced before his case was submitted to the jury, and defendant had sufficient opportunity to object to the indictment and request additional time to formulate a defense. In addition, the jury was properly instructed and made an express finding that the attempted murders were willful, deliberate, and premeditated. On these facts, we conclude that defendant forfeited his claim that the indictment did not comply with section 664." (*Houston*, *supra*, 54 Cal.4th at p. 1229.)

 *Houston*'s observations on *Arias* apply equally to this case. As set forth above, defendant was on notice, by virtue of the jury instruction conference and the trial court's questioning of counsel regarding the verdict forms, that the prosecution's theory of the case was that the attempted murder was willful, deliberate, and premeditated. Defendant never objected. Moreover, the jury here expressly found defendant guilty of willful, deliberate, and premeditated attempted murder whereas in *Arias* the jury convicted the defendant of "first degree attempted murder," a crime which does not exist.

 C. <u>Informal amendment doctrine</u>

 Even if defendant had not forfeited this objection, we would still reject it because, contrary to defendant's assertion, the

circumstances support application of the informal amendment doctrine.

"The 'Penal Code permits accusatory pleadings to be amended at any stage of the proceedings "for any defect or insufficiency."'" (*People v. Sawyers* (2017) 15 Cal.App.5th 713, 720.) "California law does not attach any talismanic significance to the existence of a written information. Under [the informal amendment] doctrine, a defendant's conduct may effect an informal amendment of an information without the People having formally filed a written amendment to the information." (*People v. Sandoval* (2006) 140 Cal.App.4th 111, 133; see, e.g., *People v. Whitmer* (2014) 230 Cal.App.4th 906, 919–920 [relying on the doctrine in upholding a conviction on a count not written in the information where the defendant did not object to instructions on that count].) Of course, the informal amendment doctrine "applies only when a defendant had reasonable notice of a sentence enhancement allegation despite an incomplete pleading." (*People v. Sawyers*, *supra*, at p. 723.)

Here, based on the conferences about the jury instructions, the actual instructions given to the jury, and the verdict forms, defendant had reasonable and ample notice that he was facing a willful, deliberate, and premeditated enhancement on the attempted murder. (*People v. Sawyers*, *supra*, 15 Cal.App.5th at p. 721 ["""The proceedings in the trial court may constitute an informal amendment of the accusatory pleading, when the defendant's conduct or circumstances created by him amount to an implied consent to the amendment"""].) We can infer that the information was amended to allege that defendant was facing willful, deliberate, and premeditated attempted murder. (*Ibid.*)

22

*People v. Anderson* (2020) 9 Cal.5th 946 is distinguishable.[3] In that case, the Attorney General acknowledged that the information did not satisfy the applicable statutory pleading requirements, but argued that because the defendant failed to object to the jury instructions or verdict forms submitting the challenged enhancements to the jury, he impliedly consented to an informal amendment of the information. (*Id.* at pp. 957–958.) Our Supreme Court was not convinced, noting that the appellate "record [did] not reveal precisely how" those enhancements were presented to the jury in instructions and verdict forms. (*Id.* at p. 958.) All the court knew was that defense counsel did not object to either the instructions or the verdict forms. (*Ibid.*)

In contrast, the appellate record in this case demonstrates more than just a failure to object by defense counsel.[4] (*People v. Anderson*, *supra*, 9 Cal.5th at p. 960.) Rather, defense counsel participated in multiple conferences with the prosecutor and the

---

[3] As pointed out by defendant in his reply brief, the People do not discuss *People v. Anderson* in their respondent's brief.

[4] For the same reason, *Arias*, *supra*, 182 Cal.App.4th 1009 is distinguishable. In that case, the Court of Appeal declined to apply the informal amendment doctrine because of "the absence of anything in the record showing an amendment." (*Id.* at p. 1021.) As discussed, the appellate record here demonstrates implied consent to an amendment. Thus, it does not matter that "the defense had no apparent reason to consent to one." (*Ibid.*; compare *Toro*, *supra*, 47 Cal.3d at pp. 976–977 [the defendant's failure to object on notice grounds to the inclusion of a lesser related offense on the verdict form amounted to implied consent to treat the information as informally amended to include the lesser offense, particularly because the defendant derived a benefit from the submission of the lesser offense to the jury].)

trial court regarding the instructions and verdict form. Thus, there is no basis for us to conclude that "the drafting of the instructions and verdict forms may have simply been a mistake." (*Ibid*.)

D. <u>No ineffective assistance of counsel</u>

Defendant argues that if we find that the instant claim is forfeited, which we do, then we should find defense counsel's performance was ineffective in violation of the Sixth Amendment. To establish such a violation, defendant must show that counsel's representation fell below an objective standard of reasonableness, and there is a reasonable probability that, but for the error, a determination more favorable to defendant would have resulted. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688; *People v. Ledesma* (1987) 43 Cal.3d 171, 216–218.)

Defendant cannot establish that he would have received a more favorable result had defense counsel objected to either the jury instruction or verdict form. Rather, it is evident that the trial court would have likely allowed the prosecution to amend the information to allege the willful, deliberate, and premeditated enhancement. After all, it instructed the jury on attempted willful, deliberate, and premeditated attempted murder with CALJIC No. 8.67. Given that the trial court believed that the instruction was warranted by the evidence, it is highly likely that it would have allowed the prosecution to amend the information. And, it is well-settled that the trial court could have allowed the amendment at any time during the proceedings. (*People v. Sawyers*, *supra*, 15 Cal.App.5th at p. 720; see also § 1009 [court may permit amendment of an information for any defect or insufficiency at any stage of the proceedings]; *People v. Arevalo-Iraheta* (2011) 193 Cal.App.4th 1574, 1580–1581 [a court may

24

allow amendment of an accusatory pleading at any time up to and including the close of trial so long as there is no prejudice to the defendant].)

    E. Harmless error

    Even if defendant had not forfeited this objection and the trial court had erred in allowing him to be convicted of premeditated and deliberate attempted murder when the accusatory pleading did not so allege, we would still affirm the conviction. Any alleged error was harmless.[5] (*People v. Anderson, supra*, 9 Cal.5th at pp. 956–957, 963–964.)

---

[5]     Relying upon *People v. Mancebo* (2002) 27 Cal.4th 735, 749 (*Mancebo*), defendant argues that because his due process right to notice was violated, we should forgo a harmless error analysis. We disagree. In *Mancebo*, the court interpreted our "One Strike" law (§ 667.61) and held that an enhancement had to be stricken because it was never pled, even though the elements necessary to establish it were implicit in the information and found by the jury. (*Mancebo, supra*, at pp. 752–753.) Subsequent cases have refused to extend *Mancebo*'s analysis to other sentencing enhancements. (See, e.g., *People v. Riva* (2003) 112 Cal.App.4th 981, 1002–1003, disapproved on other grounds in *People v. Anderson, supra*, 9 Cal.5th at pp. 956–957; *People v. Perez* (2015) 240 Cal.App.4th 1218, 1227.) In addition, in *Mancebo*, the challenged enhancement did not arise until the sentencing hearing. (*Mancebo, supra*, at p. 745.) In contrast, here the issue arose repeatedly during discussions regarding the jury instructions and verdict form. Thus, "[t]he complete lack of notice . . . is not present in the instant case, and a different standard for assessing prejudice applies here." (*People v. Garcia* (1998) 63 Cal.App.4th 820, 833; see also *People v. Anderson, supra*, at p. 957 [the question of whether a pleading is adequate is separate from the question of whether a pleading defect prejudiced the defendant].)

25

Here, defendant points to nothing he would have done differently with respect to his defense had the information contained the section 664, subdivision (a), allegation. His defense, as demonstrated by defense counsel's closing argument, pertained only to count 1. Counsel focused on the lesser included offense of voluntary manslaughter, urging the jury to find that defendant acted out of an actual but unreasonable belief that he needed to defend against imminent peril to life or great bodily injury. Defense counsel did not address the attempted murder charge at all during his closing, let alone the premeditation allegation with respect to that count. And counsel did not move to reopen the case or request a continuance in light of the proposed instructions, the verdict forms, or the prosecutor's closing argument. (See *People v. Memro* (1995) 11 Cal.4th 786, 869 ["If the prosecution's felony-murder theory surprised defendant, he could have moved to reopen the taking of evidence so as to present a defense against it"]; *People v. Seaton* (2001) 26 Cal.4th 598, 641 ["defendant never objected to the lack of notice at trial, nor did he seek a continuance to prepare sufficiently to respond to the theory"].)

In other words, any alleged deficiency in the information simply did "'not prejudice a substantial right of the defendant upon the merits.'" (§ 960; see *People v. Peyton* (2009) 176 Cal.App.4th 642, 659 [variance in pleadings not regarded as material unless it is of such substantive character as to mislead accused in preparing defense]; *People v. Paul* (1978) 78 Cal.App.3d 32, 43–44 [error in failing to allege overt act not prejudicial where defendant was fully aware of all overt acts, had benefit of discovery, and was aware of evidence against him]; *People v. McCurdy* (1958) 165 Cal.App.2d 592, 598 [claim of

26

defective pleading rejected under section 960 where the defendant failed to show that his defense was in any way prejudiced by form of information]; *People v. Thompson* (1948) 85 Cal.App.2d 261, 263–264 [no prejudice under section 960 where the defendant was informed of nature of charges through the grand jury transcript, and any defect in form of pleading, which reflected words of statute, could not have misled him].)

III. *One Additional Day of Custody Credit*

Defendant contends that the trial court erred in calculating his presentence custody credits, by awarding him 867 days of presentence custody credit when he should have received 868 days. The People agree.

Pursuant to section 2900.5, subdivision (a), a defendant convicted of a felony is entitled to credit against a state prison term for actual time spent in custody before commencement of the prison sentence, including the day of sentencing. (§ 2900.5, subd. (a); *People v. Smith* (1989) 211 Cal.App.3d 523, 526.) Generally, the time credited includes the date of arrest, the date of sentencing, and every day in between. (*People v. Smith*, *supra*, at pp. 525–526.)

Here, defendant was arrested on April 4, 2017, and he was sentenced on August 18, 2019. That time span is 868 days. The trial court, however, awarded defendant only 867 days of presentence custody credit. Accordingly, defendant is entitled to one additional day of actual custody credit. On remand, we direct the trial court to amend the abstract of judgment to reflect the correct presentence custody credit of 868 actual days.

# DISPOSITION

The matter is remanded to the trial court with directions to amend the abstract of judgment to reflect 868 days of presentence custody credit.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT